James F. McBRIDE and Leon Bennett, Appellants,

v.

Geneva A. MOSS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 14, 1969.

Glay E. Maggard, Wilson & Maggard, Munfordville, for appellants.

Morris Butler, Greensburg, Fred Faulkner, Jr., Faulkner & Bertram, Clyde Williams, Jr., Campbellsville, for appellees.

STEINFELD, Judge.

On July 10, 1964, Geneva A. Moss with Donna Bohannon, age 17, as her passenger, was driving an automobile north on U. S. Highway 68 (Greensburg Road) a short distance west of Campbellsville. James F. McBride, a truck driver employed by Leon Bennett, was operating Bennett's Chevrolet truck west on U. S. 68 detour (Friendship Road). For several days before that date Thurman Finn Watson, an employee of Nalley & Gibson Construction Co., Inc. was directing traffic but he had left his position

before the two vehicles entered the intersection without stopping and a collision ensued.

On June 9, 1965, a complaint was filed by Geneva A. Moss and by D. C. Moss as father and next friend of Donna Bohannon against McBride and Bennett seeking damages totaling $43,500.00 for the personal injuries suffered by Geneva and Donna and the property damage to the Moss automobile. McBride and Bennett answered, and among other defenses pleaded that D. C. Moss could not sue for Donna as she was a married infant. CR 17.02. Bennett counterclaimed against Geneva for the damages he sustained in the collision.

McBride and Bennett filed a motion to dismiss the claim made on behalf of Donna asserting that her father could not sue for her and that the claim was barred by the statute of limitations. KRS 413.140. They also moved that they "be permitted to file their intervening complaint * * *". The pleading was a "third party complaint" in which McBride and Bennett sought damages, indemnity and contribution from "Geneva A. Moss, Thurman Finn Watson and the Nalley & Gibson Construction Co., Inc.". The court permitted them to file the third party complaint but the motion that the action be dismissed was overruled and Donna was permitted to substitute herself as the plaintiff in the action, nunc pro tunc as of the date when the suit was filed.

On the first trial the court peremptorily instructed the jury to find in favor of Watson and his employer. The jury awarded Geneva $2,493.80 and Donna $200.00 on their claims against McBride and Bennett who promptly tendered checks in satisfaction of those amounts but the checks were refused. Geneva, Donna, McBride and Bennett moved for a new trial and it was granted.

On the second trial the verdict in favor of Geneva for her personal injuries, expenses and loss caused thereby was $10,-

000.00 and for Donna $2,300.00.[1] After unsuccessfully seeking relief below McBride and Bennett appealed from the judgment entered pursuant to those verdicts.

The first assignment of error is that the court erred in permitting Donna to substitute her name individually as the plaintiff. Appellants argue that the statute of limitation had run before the order permitting substitution was entered on the 6th day of September, 1965, and they rely upon Garrett v. Lee, Ky., 307 S.W.2d 762 (1957). Edward Garrett became an adult on February 14, 1953. He was injured the following December and a suit styled "Dorsey Garrett, as father and next friend of Edward W. Garrett, an infant, plaintiff v. Robert Charles Lee, defendant" was filed about eleven months after the accident. The trial court sustained the defendant's motion for summary judgment based upon a defense that the action was a nullity and with two dissents this court affirmed. We consider it appropriate to re-examine the texts and authorities on this subject to determine if our holding in Garrett v. Lee, supra, should be overruled.

67 C.J.S. Parties § 85, p. 1075, states:

"Where there is no change in the cause of action and the parties substituted bear some relation of interest to the original parties and to the suit, substitution may be allowed."

In Fuqua v. Fuqua, 16 S.W. 353, 13 Ky. Law Rep. 130 (1891), Molly Fuqua, the widow and administratrix of R. M. Fuqua and the statutory guardian of their three infant children, brought an action in the name of herself as widow and the three children. This court held that it was not error to allow an amended petition to be filed making her as the administratrix a party plaintiff.

We said in Town of Latonia v. Hopkins, 104 Ky. 419, 47 S.W. 248, 20 Ky.Law Rep. 620 (1898), that " * * * the court below

acted within its power in permitting this amendment (making the city a party), after the time to remonstrate had passed under section 134 of the Civil Code of Practice, as it did not in any wise change the issue, and was in furtherance of justice." A suit had been filed naming as defendants the trustees of the new city in their official capacity but failed to name the city, a municipal corporation.

In Wathen v. Mackey, 300 Ky. 115, 187 S.W.2d 1000 (1945), the suit was brought "Lawrence J. Mackey, as guardian of John W. O'Neil, infant". It was contended that because the action was so styled there was a defect of parties. Although we held that the question was raised too late we referred to Illinois Cent. R. Co. v. Head, 119 Ky. 809, 84 S.W. 751, 27 Ky.Law Rep. 270 (1905), in which we said that "The cause of action was in the infant, and should have been brought in his name by * * * his statutory guardian." We continued in Wathen:

"We cannot see how the fact that the suit was brought and prosecuted in the manner indicated could have in any wise prejudiced the rights of appellant. The infant was treated in the petition, defendants' answer, and throughout trial, as the real party, and 'no one can mistake its purpose to have a recovery for the infant, and for injuries received by him.' Chesapeake & O. R. Co. v. Case, 158 Ky. 594, 165 S.W. 968, 969."

Following a motor vehicle collision an action was brought individually and as an administrator in Caldwell v. Hoskins, Ky., 312 S.W.2d 616 (1958). The defendant argued that the appointment of the administrator " * * * by the Leslie County Court was void because the deceased child was a resident of Clay County." We held that " * * * defendant waived the objection by not timely raising this collateral issue, and we cannot see how defendant has been or would be prejudiced."

1. Geneva Moss was awarded $1,200.00 for damage to her automobile. This award was not challenged on this appeal.

In Modern Bakery, Inc. v. Brashear, Ky., 405 S.W.2d 742 (1966) we pointed out that when a " * * * plaintiff seeks to change the capacity in which the action is brought * * * " and the "opposing party is reasonably informed of the general wrong complained of and the background out of which the claim arose * * * the statute of limitations should not constitute a bar" and substitution of the real party in interest should be permitted.

■ Donna was the person for whose benefit the suit was filed and she was the real party in interest. Even though the objection was timely made, since the cause of action was not changed the court did not commit error in permitting the amendment. See Fierstein v. Piper Aircraft Corporation (D.C.Pa.) 79 F.Supp. 217 (1948), which holds that the spirit of present day court procedure is "to settle controversies upon their merits rather than to dismiss actions on technical grounds, to permit amendments liberally, and to avoid if possible depriving a litigant of a chance to bring his case to trial." We conclude that Garrett v. Lee, Ky., 307 S.W.2d 762 (1957), should be and it is overruled.

The Moss car was moving northwardly along U. S. Highway 68 (known as Greensburg Road) approaching Friendship Road which was serving as a detour during construction of U. S. Highway 68. Bennett's truck, driven by McBride, was going westwardly on the detour. The two vehicles collided in the intersection. It is not argued that there was insufficient evidence to sustain the verdict that Bennett's driver was negligent, but it is contended that the negligence of Thurman Finn Watson, who was the servant of Nalley & Gibson Construction Co., Inc., was a proximate cause of the collision.

Watson, a third party defendant, had been directing traffic at the intersection for several previous days and he had been "stopping cars going through the intersection to keep them from hitting trucks going north". Geneva testified that traffic was very heavy on both roads and that she "stopped and asked a flagman if it was all right for (her) to cross, * * * and he said it was all right to go right on." He was stationed about 150 feet from the intersection and another flagman was "flagging traffic on". Watson had left his post and was talking to someone in a truck at the time the accident occurred. Witnesses stated that drivers had relied on his presence.

The appellants insist that the court erred in directing a verdict in favor of Watson and his employer. They urge that "the issue of proximate cause should (have been) submitted to the jury under proper instructions of the court." They cite 38 Am. Jur. 659, Negligence, Sec. 17; 90 A.L.R.2d 1432; 48 A.L.R.2d 235; Hinton v. Dixie Ohio Express Co. (CCA 6) 188 F.2d 121 (1951) and Ferroggiaro v. Bowline, 153 Cal.App.2d 759, 315 P.2d 446, 64 A.L.R.2d 1355 (1957).

In response appellees Watson and Nalley & Gibson Construction Co., Inc., argue that no cause of action was proved against them and they rely on Ambrosius Industries, Inc. v. Adams, Ky., 293 S.W.2d 230 (1956), which held "Indemnity between tort-feasors is allowed when the negligence of the person claiming indemnity is passive and secondary and the negligence of the person from whom indemnity is sought is primary and active."

■ The traffic conditions were apparent to both drivers. Performance of their respective duties to keep a lookout would have disclosed the absence of a traffic guard. The lack of the guard was a condition, and if it was negligence it was not a proximate cause of the collision. Commonwealth, Department of Highways v. Graham, Ky., 410 S.W.2d 619 (1967); 65 C.J.S. Negligence § 112(2), p. 1204.

McBride and Bennett next contend that the court erred in granting a new trial to Geneva and Donna. It will be remembered that McBride and Bennett also asked for a new trial, however, they argued below

"there were no errors committed in the trial of this case that were prejudicial to plaintiffs, and that the plaintiffs are not entitled to a new trial, but that in the event a new trial is granted, the trial should be on all issues joined by the pleadings in this action." The order granting a new trial read in part " * * * the Motion of the plaintiffs, Geneva Moss and Donna Bohannon, together with the Motion of the defendants, James F. McBride and Leon Bennett, be and the same is hereby sustained as to a new trial upon the plaintiffs' complaint, and the defendants' counterclaim, and as to defendants', James F. McBride and Leon Bennett, third party complaint as against the third party defendant, Geneva Moss."

■ They were not entitled to try again against Watson and his employer, and they were granted that which they asked as to all other issues. The discretion of the trial court will not be reversed unless abused and we find no indication that it was as the record supports its ruling. City of Louisville v. Allen, Ky., 385 S.W.2d 179 (1964).[1]

The last assignment of error is the claim that damages awarded were excessive. Geneva, age 46, with a life expectancy of 36.7 years, suffered an injury to her back and was required to wear a brace at least part of the time. Her medical expenses were $293.80. She said she could not do her housework and had to give up sewing and her other work and that she had to have help at home. The accident happened more than two years before the trial. She testified that she continues to be unable to sleep at night on occasions and if she engages in any "overwork" she is unable to rest at night; that every four hours during the day and throughout the night she has to take various sedatives to relieve the pain. She had been working in a drugstore up until about five months before the accident and her average earnings were $50.00 per week. At the time of the accident, in addition to her household duties, she was earning about $30.00 per week babysitting but since the accident she was unable to follow her babysitting activities.

■ Dr. Allen F. Zoeller, an orthopedic surgeon, testified that he saw and treated Geneva on several occasions. His examination revealed that she had a "ligament injury". X-rays convinced him that Geneva sustained "a mild compression fracture of the 7th thoracic vertebra which did heal". The doctor explained that he ordered her to wear a metal back brace covered with leather to "give the injured structures a chance to heal up and give the patient some relief from her pain". He also prescribed pain-killing medication and other types of treatment. He said: " * * she will definitely have some permanent disability consisting of back pain and stiffness which will vary in frequency and in intensity. In other words, she would have healed by now if she were going to." From that testimony and other heard by the jury we are unwilling to say that the verdict for Geneva was so excessive, if excessive at all, as to indicate that the amount was awarded through passion and prejudice. Noel v. Creary, Ky., 385 S.W.2d 951 (1964).

■ Donna, with a life expectancy of 55.9 years, was pregnant when the collision occurred. She too sustained a back and neck injury and spent $200.80 for treatment. The doctor stated that she had pain brought about by "ligament injuries of the cervical and lumbo-sacral spine". He expressed the opinion that "she will never heal completely" and that "she will have a partial permanent disability to the body as a whole of 15%." The award of $2,300.00 to Donna was not excessive.

The judgment is affirmed.

All concur.

1. Overruled on another point in Nolan v. Spears, Ky., 432 S.W.2d 425 (1968).